IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DALE CRAWFORD,

      Petitioner,                   No. CIV S-06-0868 GEB GGH P

    vs.

WARDEN CAREY, et al.,

      Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1989 petitioner was convicted of second degree murder and sentenced to 15 years to life. Petitioner challenges the 2004 decision by the California Board of Prison Terms (BPT) finding him unsuitable for parole. This was petitioner's third suitability hearing. After carefully reviewing the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

      The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

1

standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

2

1 Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is
2 contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An
3 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has
4 occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the
5 established Supreme Court authority reviewed must be a pronouncement on constitutional
6 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules
7 binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

8        However, where the state courts have not addressed the constitutional issue in
9 dispute in any reasoned opinion, the federal court will independently review the record in
10 adjudication of that issue.  "Independent review of the record is not de novo review of the
11 constitutional issue, but rather, the only method by which we can determine whether a silent state
12 court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.
13 2003).

14        Petitioner filed a habeas corpus petition in the Shasta County Superior Court
15 raising the claims raised in the instant petition.  Respondent's Answer, Exhibit D.  The Superior
16 Court issued a reasoned decision denying the petition.  Id., Exhibit E.  Petitioner filed habeas
17 petitions in the California Court of Appeal and California Supreme Court which were summarily
18 denied.  Id., Exhibits G and I.  When reviewing a state court's summary denial of a claim, the
19 court "looks through" the summary disposition to the last reasoned decision.  Shackleford v.
20 Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

21 III.  Background

22        The factual background of petitioner's offense is relevant to the analysis of
23 petitioner's claims.  A factual summary is contained in the transcript from petitioner's 2004
24 suitability hearing.

25        On February 6, 1988, Shasta County detectives responded to Clear Creek Road in
       regards to a possible homicide victim.  Upon arrival, detectives were informed
26        that a female victim–found under a mound of tires [sic].  The victim wore only

blue pants and officers observed obvious head wounds. The body was taken to the coroner's office and on February 7, 1988, an autopsy was conducted. The cause of death was multiple injuries to the head inflicted by a blunt, rolled-edged instrument. The corner [sic] stated that the victim could have lived from one hour up to 12 hours and the victim was not killed at the crime scene. On February 8, 1988, the victim was identified as Theresa, and it's spelled T-H-E-R-E-S-A, Lynn, L-Y-N-N, Crawford, C-R-A-W-F-O-R-D. The victim's most recent address was 1437 Spruce Street. She shared this address with her husband Dale Crawford, the defendant. On February 8, 1988, detectives interviewed Dale Crawford at his place of work and informed him of Theresa's death. The defendant stated that the last time he saw Theresa Crawford was for about 10 minutes around 5 p.m. on Friday, February 5, 1988, at their apartment on Spruce Street. The defendant stated Theresa was drunk and that he wanted her to sober up so that she could go to a job interview, instead she got mad and left the residence. A search of the defendant's residence was conducted and several type O bloodstains were found in the residence. The defendant's pickup was searched and a pair of work gloves were found which had type O bloodstains and fibers which matched the victim's jeans, fibers from her bedspread and rubber fibers consistent (indiscernible). The bloodstains were analyzed by the Serological Research Institute which concluded that the blood could have originated from Theresa Crawford but not from Dale Crawford. The work gloves were examined by the Forensic Science Associates which concluded that the fibers from the victim's pants and fibers on the gloves could have originated from the victim's pants. The bedspread fibers and those from the gloves were the same. Dale Crawford was interviewed several times by Shasta County detectives. He denied killing his wife. On May 2, 1988, Dale Crawford was arrested and booked into the Shasta County jail and charged with violation of Penal Code section 187.

Respondent's Answer, Exhibit B, pp. 11-13.

IV. Discussion

The petition raises three claims challenging the sufficiency of the evidence finding petitioner unsuitable for parole.

Respondent first argues that the court lacks subject matter jurisdiction to consider the petition because petitioner has no liberty interest in being released on parole. Respondent confuses the subject matter jurisdiction of the court with failure to state a cognizable claim. Clearly, the court has subject matter jurisdiction over petitioner's habeas corpus claim pursuant to 28 U.S.C. § 2254. Federal question jurisdiction exists if the complaint (or petition) purports to state a claim under federal law regardless of the validity of the claim. Wheeldin v. Wheeler, 373 U.S. 647, 83 S. Ct. 1441, 1444 (1963). Only if the stated federal claim is so wholly insubstantial that even a preliminary review of the merits is not required does the federal court not have

1  jurisdiction.  Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946).  It is not every arguably failed
2  claim that deprives the district court of jurisdiction.  Here, petitioner properly invoked § 2254 for
3  the basis of his habeas claim.  His contentions that he was denied due process in the parole
4  setting process are not so insubstantial so as to deprive the court of jurisdiction.

5        Respondent next argues that California law does not give rise to a federally
6  protected liberty interest in parole release.  The Ninth Circuit rejected this argument.  Sass v.
7  California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006).

8        In the parole context, the requirements of due process are met if "some evidence"
9  supports the decision."  Id. at 1128-1129.  In reviewing the BPT decision, the court analyzes
10 whether the factors relied on by the BPT, set forth in the relevant regulations, are supported by
11 some evidence.

12       Cal. Code of Regulations, section 2402(c), sets forth the circumstances tending to
13 show unsuitability.  The court lists those of significance here:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style manner.
>
> *****
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

5

*****

*****

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

In <u>Biggs v. Terhune</u>, 334 F.3d 910 (9th Cir. 2003) the Ninth Circuit indicated that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation.  Biggs was serving a sentence of twenty-five years to life following a 1985 first degree murder conviction.  In the case before the Ninth Circuit, Biggs challenged the 1999 decision by the BPT finding him unsuitable for parole despite his record as a

6

model prisoner. 334 F.3d at 913. While the Ninth Circuit rejected several of the reasons given by the BPT for finding Biggs unsuitable, it upheld three: 1) petitioner's commitment offense involved the murder of a witness; 2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; 3) petitioner could benefit from therapy. 334 F.3d at 913.

The Ninth Circuit cautioned the BPT regarding its continued reliance on the gravity of the offense and petitioner's conduct prior to the offense:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest.

334 F.3d at 916.

In finding petitioner unsuitable for parole, the BPT relied on several factors related to petitioner's commitment offense. Because petitioner had been incarcerated for 15 years on his 15 year to life sentence, and because this was only his third parole suitability hearing, the court does not find that the BPT's reliance on these unchanging factors alone violated petitioner's right to due process. Accordingly, the court will consider the merits of each of these unchanging factors.

The BPT first found that petitioner's offense was committed in a "dispassionate" manner. Answer, Exhibit B, p. 65. As stated above, a circumstance tending to show unsuitability is if the offense was carried out in a dispassionate and calculated manner, such as an execution style killing. Cal. Code Regs. tit. 15, § 2402(c)(1)(B).

In In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr. 2d 104 (2002), the California Supreme Court found sufficient evidence to support a finding that the offense was carried out in dispassionate and calculated manner, such as execution style. The evidence showed that the

7

1  petitioner murdered the victim after "a full week of careful preparation, rehearsal and execution."
2  29 Cal. 4th at 678, 128 Cal. Rptr. 2d at 157.  The petitioner fired ten shots at close range from an
3  assault weapon and fired three or four shots into the victim's head as he lay on the pavement.  Id.
4  In In re Lowe, 130 Cal. App. 4th 1405, 31 Cal. Rptr. 3d 1 (2005) the California Court of Appeal
5  found sufficient evidence of an execution style murder where the petitioner purchased the gun
6  shortly before the murder, entered the victim's bedroom in the middle of the night while he was
7  asleep, and shot him five times in the head and chest.  130 Cal. App. 4th at 1414, 31 Cal. Rptr.
8  3d at 5.

9         The record in the instant case does not contain sufficient evidence that petitioner
10  killed his wife in a dispassionate and calculated manner, such as an execution style murder.  The
11  record contains no evidence that petitioner planned to kill his wife.  Nor does the record contain
12  any evidence that the killing was dispassionate.  In fact, the record contains no evidence
13  regarding the circumstances leading up to the murder.  The BPT's inference that the killing was
14  dispassionate and calculated based on the fact that petitioner hit his wife in the head several times
15  and then attempted to conceal her body is unreasonable.  Rather, it is very possible that petitioner
16  killed his wife in the heat of an argument.  Accordingly, this finding is not supported by some
17  evidence.

18         The BPT next found that the offense was carried out in a manner which
19  demonstrated an exceptionally callous disregard for human suffering.  Answer, Exhibit B, p. 65.
20  Cal. Code Regs. tit. 15, § 2402(c)(1)(D).  As stated above, the coroner found that petitioner's
21  wife could have lived for one to twelve hours after infliction of the injuries, and that she was not
22  killed at the crime scene.  Based on these circumstances, the court finds that the BPT's finding
23  that the offense was carried out in a manner demonstrating an exceptionally callous disregard for
24  human suffering is supported by some evidence.  See In re Burns, 136 Cal. App. 4th 1318, 1327,
25  40 Cal. Rptr. 3d 1, 6 (2006) (offense carried out in a manner demonstrating exceptionally callous
26  disregard for human suffering where petitioner did not summon help for victim; petitioner had

one to two hours to reconsider disregard for victim's suffering and life, but failed to do so).

The BPT next found that the motive for the crime was inexplicable. Cal. Code Regs. tit. 15, § 2402(c)(1)(E). The California Court of Appeal has explained what is meant by "inexplicable motive":

> The epistemological and ethical problems involved in the ascertainment and evaluation of motive are among the reasons the law has sought to avoid the subject. As one authority has stated, "[h]ardly any part of penal law is more definitely settled than that motive is irrelevant." (Hall, General Principles of Criminal Law (2d ed. 1960) at p. 88; see also Husak, Motive and Criminal Liability (1989) vol. 8, No. 1, Crim. Justice Ethics 3.) An "inexplicable" motive, as we understand it, is one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose. A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous.

In re Scott, 119 Cal. App. 4th 871, 892, 15 Cal. Rptr. 3d 32, 47 (2004).

In the instant case, the record (as discussed at the 2004 suitability hearing) contained no evidence regarding the circumstances of the murder, other than how it was actually committed. The record contained no evidence regarding the conduct of petitioner or his wife leading up to the murder. Without knowing any information regarding the circumstances of the killing, the court cannot find that petitioner's motive was inexplicable. It is not reasonable for the BPT to infer, based on a lack of evidence, that petitioner's motive could not be explained or was unintelligible. Accordingly, the court does not find this factor to be supported by some evidence.

The BPT next found petitioner unsuitable on grounds that he had an unstable social history. Answer, Exhibit B, pp. 66-67. Cal. Code Regs. tit. 15, § 2402(c)(3) (unstable or tumultuous relationships tend to show unsuitability). The BPT stated that while petitioner had a relatively stable social history with his family, he "apparently had an unstable social history in regards to the victim who was his wife of–he said–two months." Id., p. 67.

Based on the BPT's reasoning in this case, every prisoner convicted of murder would have an unstable social history based on the fact that they killed someone. This

9

interpretation of the regulation is not reasonable. In any event, there is no evidence in this record describing petitioners relationship with his wife prior to the murder. It is possible, for example, that petitioner had a stable relationship with his wife, but killed her after she admitted to having an affair. This circumstance would not support a finding of unstable social history. For these reasons, the court finds that the BPT's finding of unstable social history is not supported by some evidence.

The BPT next found that petitioner was unsuitable because he had programmed in a limited manner. Answer, Exhibit B, p. 67. Cal. Code Regs. tit. 15, § 2402(d)(9) (institutional activities indicate an enhanced ability to function within the law upon release). In particular, the BPT noted petitioner's failure to upgrade educationally and vocationally, and his failure to participate in any self-help programs. Answer, Exhibit B, p. 67.

The psychological report prepared in anticipation of petitioner's 2000 suitability hearing by Dr. Clair, and relied on by the 2004 panel, stated that petitioner had no current mental health treatment needs. Petition, Exhibit G. Dr. Clair concluded that petitioner was highly unlikely to be a threat to the public order if released. Id. Based on Dr. Clair's report, the court finds that the BPT's finding that petitioner's failure to participate in self-help programs demonstrated unsuitability was not supported by some evidence.

Petitioner graduated from high school prior to his incarceration, but had not participated in any educational programs during his incarceration. Petition, Exhibit F. Petitioner had also not participated in any vocational training during his incarceration. Id. While petitioner may not believe he needed any additional educational or vocational training, his failure to participate in these programs demonstrated a lack of desire for self-improvement. For this reason, the BPT's finding that petitioner's failure to participate in educational and vocational programs supported a finding of unsuitability was supported by some evidence.

For the reasons discussed above, the court finds that the 2004 decision by the BPT finding petitioner unsuitable for parole was supported by some evidence: 1) the murder was

1 carried out in a manner demonstrating an exceptionally callous disregard for human life;[1] 2)
2 petitioner's failure to participate in educational and vocational training did not demonstrate an
3 enhanced ability to function within the law upon release. Because the denial of this claim by the
4 Shasta County Superior Court was not an unreasonable application of clearly established
5 Supreme Court authority, the petition should be denied.

6       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
7 a writ of habeas corpus be denied.

8       These findings and recommendations are submitted to the United States District
9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty
10 days after being served with these findings and recommendations, any party may file written
11 objections with the court and serve a copy on all parties. Such a document should be captioned
12 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
13 shall be served and filed within ten days after service of the objections. The parties are advised
14 that failure to file objections within the specified time may waive the right to appeal the District
15 Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 DATED: 2/20/07

17       /s/ Gregory G. Hollows

18       GREGORY G. HOLLOWS
      UNITED STATES MAGISTRATE JUDGE
19

20 craw868.157

---

[1] The time is close, however, that continued reliance on this unchanging factor may well violate due process. Biggs, supra.

11